MATERNALLY YOURS, Inc.,
Plaintiff-Appellee,

v.

YOUR MATERNITY SHOP, Inc.,
Defendant-Appellant.

No. 196, Docket 23796.

United States Court of Appeals
Second Circuit.

Argued December 19–20, 1955.

Decided June 6, 1956.

540

Hartman, Sheridan & Tekulsky, New York City (Asher Blum, Mock & Blum, New York City, of counsel), for defendant-appellant.

Gallop, Climenko & Gould, New York City, Milton S. Gould, Herbert L. Scharf, of counsel, New York City, for plaintiff-appellee.

Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

This action involves a claim of trademark infringement under the Lanham Act, 15 U.S.C.A. § 1051 et seq., and a claim of unfair competition presumably governed by the law of New York.[1] Ju-

1. Prior to Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, federal judge-made law was considered to control the determination of the issues of both trade-mark infringement and unfair competition in cases brought in the federal courts. The prevailing view subsequent to Erie has been that federal law governed infringement of federally-registered trade-marks, while state law governed common-law unfair competition. See, e. g., Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Radio Shack Corp. v. Radio Shack, 7 Cir., 1950, 180 F.2d 200; Food Fair Stores v. Food Fair, 1 Cir., 1949, 177 F.2d 177; Campbell Soup Co. v. Armour & Co., 3 Cir., 1949, 175 F.2d 795; Jewel Tea Co. v. Kraus, 7 Cir., 1950, 187 F.2d 278, 282; Grocers Baking Co. v. Sigler, 6 Cir., 1942, 132 F.2d 498; Time, Inc., v. Viobin Corp., 7 Cir., 1942, 128 F.2d 860; Time, Inc., v. Life Television Corp., D.C.D.Minn.1954, 123 F.Supp. 470; National Fruit Product Co. v. Dwinell-Wright Co., D.C.D.Mass. 1942, 47 F.Supp. 499, 503-504, affirmed 1 Cir., 1944, 140 F.2d 618. The practice in this Circuit, until very recently, has been to ignore the usually-theoretical question of what law governs and to draw precedents from both federal and and state (usually New York) courts. See, e. g., Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., 2 Cir., 1944, 147 F.2d 500, where we relied on this indeterminate general law even though the lower court had discussed the question.

The Ninth Circuit has held that § 44 of the Lanham Act, 15 U.S.C.A. § 1126, enacted by Congress in 1946, created a substantive federal law of unfair competition wherever interstate commerce is involved; and that federal district courts have federal-question jurisdiction over all claims of unfair competition by those engaged in interstate commerce, even though the infringing acts are not themselves in interstate commerce. Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962; Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339. In American Auto. Ass'n v. Spiegel, 2 Cir., 1953, 205 F.2d 771, we rejected the view that the Lanham Act brought all claims of unfair competition by those engaged in interstate commerce within the federal-question jurisdiction of federal district courts. Since we held in that case that the district court did not have jurisdiction, we did not reach the corollary question of whether state or federal law governs a claim for unfair competition. However, in Artype, Incorporated, v. Zappulla, 2 Cir., 1956, 228 F.2d 695, it was clearly indicated that state law governed a claim for unfair competition brought in a federal court. It is true that federal jurisdiction in the Artype case, supra, was rested by the court on diversity of citizenship rather than on the pendent jurisdiction of federal courts over a common-law claim when combined with a substantial and related federal claim. See, with respect to the doctrine of pendent jurisdiction, Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, the holding of which is now codified as to patents, trade-marks, and copyrights in 28 U.S.C.A. § 1338(b). But despite repeated statements implying the contrary, it is the *source* of the right sued upon, and not the ground on which fed-

# 541

risdiction over the trade-mark infringement claim rests on 15 U.S.C.A. § 1121 and 28 U.S.C.A. § 1338(a), while jurisdiction over the related unfair competition claim is based on 28 U.S.C.A. § 1338 (b), if not also on the Lanham Act.[2]

Plaintiff, Maternally Yours, Inc., is a New York corporation engaged in the retail merchandising of maternity apparel in the New York metropolitan area. A predecessor partnership commenced doing business under the name "Maternally Yours" in Bronx, N. Y., in October, 1945. The partnership filed an application for registration of the trade-mark "Maternally Yours" in December, 1945, and this trade-mark was duly registered in plaintiff's name in May, 1949. The idea of a specialized retail shop selling only maternity wear was new—"Maternally Yours" was one of the first shops of its kind in the New York area, if not in the country. Business prospered from the outset, and new stores were added. By 1954 plaintiff operated ten stores in the New York metropolitan area under the name "Maternally Yours."

Defendant, Your Maternity Shop, Inc., opened a maternity wear store in New Rochelle, N. Y., in September, 1946, under the name "Your Maternity Shop." In October, 1946, plaintiff served formal notice of infringement on defendant at its New Rochelle store, but defendant continued to operate under the name "Your Maternity Shop." In November, 1946, defendant opened a store within two blocks of plaintiff's Bronx store, and in subsequent years defendant continued to expand its business. Telephone listings were made under "Maternity Shop Your" as well as "Your Maternity Shop." In 1954 defendant was operating five maternity wear stores under the name "Your Maternity Shop." Four of these stores were located in the New York metropolitan area and the fifth in Philadelphia, Pa.

Plaintiff brought this action to enjoin defendant from infringing plaintiff's alleged common-law trade-mark from 1945 to the present and from infringing plaintiff's registered mark subsequent to its registration in 1949, and for an accounting for damages and profits resulting from the alleged infringements. The trial judge found in favor of the plaintiff on both the trade-mark infringement and unfair competition claims, and issued a decree enjoining defendant from using the name "Your Maternity Shop" in connection with the sale or advertising of maternity apparel, and ordering an accounting for damages and profits by a special master.

eral jurisdiction over the case is founded, which determines the governing law. See, Hart & Wechsler, The Federal Courts and the Federal System (1953) 690-700. Thus, the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law. See, e. g., Rothenberg v. H. Rothstein & Sons, 3 Cir., 1950, 183 F.2d 524, 21 A.L.R.2d 832. Cf. Wichita Royalty Co. v. City National Bank, 1939, 306 U.S. 103, 107, 59 S.Ct. 420, 83 L.Ed. 515. Likewise, the Erie doctrine is inapplicable to claims or issues created and governed by federal law, even if the jurisdiction of the federal court rests on diversity of citizenship. See, e. g., Sola Electric Co. v. Jefferson Electric Co., 1942, 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165; Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; cf. Prudence Realization Corp. v. Geist,

1942, 316 U.S. 89, 95, 62 S.Ct. 978, 86 L.Ed. 1293. Therefore, this court's holding in the Spiegel case, supra, when viewed in conjunction with Artype, Incorporated v. Zappulla, supra, would appear to require the application of state law to unfair competition claims, whether or not combined with a trade-mark infringement claim under federal law.

Decision of these questions, however, is unnecessary for the disposition of this case, and they are raised only to indicate that we are conscious of their existence. For the purpose of decision in this case we will assume that state law governs a claim for unfair competition, leaving to the future questions concerning the scope of the Spiegel case, supra, and its continuing validity, as well as the other related matters discussed by Judge Clark in his concurring opinion.

2. See note 5, infra.

**542**

Defendant contends that plaintiff's registration is void because plaintiff's application falsely stated that "The trade-mark has been continuously used and applied [to Maternity Apparel consisting of dresses, slips, bloomers, toppers, lounging robes, housecoats, girdles, brassieres, nightgowns] in applicant's business since Nov. 27, 1945." The only evidence of any use of the trade-mark "Maternally Yours" prior to the filing of this application in December, 1945, concerned the sale and mailing of a maternity "jumper" to a customer in Newark, N. J. Defendant contends that this sale was an intrastate sale, completed by over-the-counter delivery, but the trial judge apparently believed the testimony that the sale had been consummated by an interstate mail delivery. A single instance of interstate use, when the accompanying circumstances indicate an intent to continue the use, has been held sufficient to justify registration of a trade-mark. Worden v. Cannaliato, 1923, 52 App.D.C. 254, 285 F. 988, 990; Montgomery Ward & Co. v. Sears, Roebuck & Co., 1931, 49 F.2d 842, 18 C.C.P.A., Patents, 1386. Moreover, the mere fact of plaintiff's registration created a strong presumption of validity, which defendant did not rebut. See 15 U.S.C.A. §§ 1057(b), 1115(b); Pastificio Spiga Societa Per Azioni v. De Martini Macaroni, 2 Cir., 1952, 200 F.2d 325.

Defendant also contends that plaintiff's registration is invalid because of the prior registration of the trade-mark "Maternelle" by DuBarry Frock Corporation. The Patent Office declined to register plaintiff's mark from the time of application in 1945 until May, 1949, because of the similarity between "Maternelle" and "Maternally Yours." In 1949, however, the Patent Office determined that "Maternelle" had been abandoned and registered plaintiff's mark. Defendant argues that this determination was based entirely upon the failure of the successor of DuBarry Frock Corporation to obtain and record a written assignment of the trade-mark. Whether this view is correct or not as a matter of fact is not determinative, since defendant has completely failed to prove fraud on the part of the plaintiff or other facts which would overcome the statutory presumption of validity of plaintiff's registration as well as the *prima facie* correctness of Patent Office proceedings.

Plaintiff's right to injunctive relief under the Lanham Act, 15 U.S.C.A. § 1114(1), depends upon a determination that the defendant's use of "Your Maternity Shop" in connection with the sale and advertising of maternity apparel " * * * is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *." It is not necessary to show actual cases of deception or confusion, Admiral Corp. v. Penco, Inc., 2 Cir., 1953, 203 F.2d 517, 520; LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 1946, 157 F.2d 115, since the test is the likelihood that an appreciable number of ordinarily prudent purchasers will be confused. G. B. Kent & Sons, Limited v. P. Lorillard Co., D.C. S.D.N.Y., 1953, 114 F.Supp. 621, 626, affirmed per curiam 2 Cir., 210 F.2d 953; Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 1952, 199 F.2d 602; Eastern Wine Corporation v. Winslow-Warren, Ltd., 2 Cir., 1943, 137 F.2d 955, 960, certiorari denied 1943, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452; United Drug Co. v. Obear-Nester Glass Co., 8 Cir., 1940, 111 F.2d 997, 999, certiorari denied 311 U.S. 665, 61 S.Ct. 22, 85 L.Ed. 427.

The trial judge found that "Defendant's use of the trade-mark 'Your Maternity Shop' was misleading, caused confusion, and did divert trade from plaintiff" and that "Defendant, with knowledge of plaintiff's trade-mark, adopted the trade name 'Your Maternity Shop' and located its store in Bronx County within two blocks of plaintiff's store, imitated plaintiff's format and slanted script in its advertising, used similar packing boxes, and adopted confusing telephone listings, all with the obvious intention of misleading the public and diverting trade from the plain-

tiff." We think that the result reached was correct, although we would place less emphasis upon the subjective intent of the alleged infringer. An intent on the part of an alleged infringer to palm off his products as those of another is, of course, a relevant factor in determining the likelihood of consumer confusion.[3] Best & Co. v. Miller, 2 Cir., 1948, 167 F.2d 374, 377; L. E. Waterman Co. v. Gordon, 2 Cir., 1934, 72 F.2d 272, 273; and see Hyde Park Clothes, Inc., v. Hyde Park Fashions, Inc., 2 Cir., 1953, 204 F. 2d 223, 226 et seq. But it is only one of the factors which should be carefully weighed, such as the degree of similarity between the trade-marks in appearance and suggestion, the strength of the plaintiff's mark, the area and manner of concurrent use, and the degree of care likely to be exercised by purchasers. See Restatement of Torts § 729.

■ In this case the similarity of the names is not so marked as to itself create the probability that reasonably prudent consumers would be confused. But when the relatively circumscribed area of concurrent use (the New York metropolitan area), the narrow specialty market within that area to which the concurrent use was largely confined (retail maternity apparel shops), the close proximity of many of the stores, the novelty of plaintiff's trade-mark, and the seemingly studied imitation by defendant of plaintiff's signs, labels, boxes, advertising slogans, and telephone listings, all are taken into account, the likelihood of confusion is adequately established. Evidence of actual confusion bolsters this conclusion; one consumer testified to being confused; there was evidence that telephone information operators confused the names on a substantial portion of calls for information; and there was evidence that numerous mail and packages had been mis-addressed or mis-delivered. Thus we conclude that de-

fendant infringed plaintiff's registered trade-mark "Maternally Yours" subsequent to its registration in May, 1949.

### Unfair Competition

■ Defendant contends that the district court had no jurisdiction over the unfair competition claim because it originated prior to the registration of plaintiff's trade-mark in 1949. 28 U.S.C.A. § 1338(b) confers jurisdiction of "a claim of unfair competition when joined with a *substantial and related claim* under the copyright, patent or trade-mark laws." [Emphasis added.] We think that the trade-mark infringement claim in this case is a substantial and related claim, and hence the district court had jurisdiction over the unfair competition claim despite the fact that it originated prior to the trade-mark registration. The purpose of § 1338(b) as stated by the Reviser was "to avoid 'piecemeal' litigation to enforce common-law and statutory copyright, patent, and trade-mark rights by specifically permitting such enforcement in a single civil action in the district court." Reviser's Notes to 28 U.S. C.A. § 1338(b), 1948 Revision of Judicial Code. This purpose would be frustrated were we to accept defendant's contention that the two claims must have exact chronological correspondence and identity.

Prior to the enactment of 28 U.S.C. § 1338(b), this Circuit took a narrow and restrictive view of the pendent jurisdiction of federal district courts over non-federal claims joined with substantial federal claims. Zalkind v. Scheinman, 2 Cir., 1943, 139 F.2d 895, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572; Treasure Imports v. Henry Amdur & Sons, 2 Cir., 1942, 127 F.2d 3; Musher Foundation v. Alba Trading Co., 2 Cir., 1942, 127 F.2d 9. Virtual identity of proof of the federal and non-federal claim was required. This view persisted

---

3. Evidence of the alleged infringer's intent to cause confusion, though not essential to a trade-mark or unfair competition action is relevant as an opinion by one familiar with market conditions, the alleged infringer himself, that there is likelihood of confusion. See, Triangle Publications, Inc., v. Rohrlich, 2 Cir., 1948, 167 F.2d 969; Restatement, Torts § 729, comment f (1938).

even after the doctrine of Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, was included in the 1948 Judicial Code as 28 U.S.C.A. § 1338(b). See Kleinman v. Betty Dain Creations, 2 Cir., 1951, 189 F.2d 546. However, in Telechron, Inc., v. Parissi, 2 Cir., 1952, 197 F.2d 757, it was stated that Schreyer v. Casco Products Corp., 2 Cir., 1951, 190 F.2d 921, certiorari denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683, had overruled the Kleinman case, supra. Thus we are now committed to a broader view of pendent jurisdiction, at least in those cases involving a substantial federal question under the patent, copyright or trade-mark laws within 28 U.S.C.A. § 1338(b).[4] Even under our somewhat restricted view of pendent jurisdiction prior to the enactment of 28 U.S.C.A. § 1338(b), we were careful to point out, after reviewing all the decisions in this Circuit, that "[t]he crucial factor is not * * * any mere difference in time." Zalkind v. Scheinman, supra, 139 F.2d at page 902.

In this case the claim of unfair competition originated in September, 1946, when defendant opened its New Rochelle store. Plaintiff's trade-mark was registered in May, 1949, and it is from that time that its federal claim of trade-mark infringement dates. Subsequent to May, 1949, the continuing operation of defendant under the names "Your Maternity Shop" and "Maternity Shop Your" is the basis of both the trade-mark infringement and unfair competition claims. The close relation of the two claims is demonstrated by this considerable overlap in their factual basis and by the additional fact that nearly all the evidence received at the trial, other than that concerned with plaintiff's application and registration of "Maternally Yours" was relevant to both claims. Under the circumstances, the district court was not without jurisdiction.[5]

▉ Turning to the merits of the unfair competition claim, defendant contends that plaintiff did not acquire a common-law trade-mark and that, even if so, such trade-mark was not infringed by its use of "Your Maternity Shop." This contention is governed by much the same considerations as the trade-mark infringement claim previously discussed. We agree with the trial judge that plaintiff's chosen name was arbitrary and fanciful rather than descriptive, even though it suggested to some extent the line of business. But even if this were not so, plaintiff's name would be entitled to protection if it had acquired a secondary meaning by the time of defendant's entry. Plaintiff was one of the first to enter a narrow and specialized field; it spent a substantial amount on advertising and promoting its name and mark; and its marked success and rapid expansion into an interstate chain of three stores had produced widespread and unusual recognition of its name and operation in the national press by the time defendant entered the field in September, 1946, under the name "Your Maternity Shop." We think that these circumstances indicate that plaintiff's name and mark had acquired a secondary meaning by the time of defendant's entry. The applicable New York law, which is discussed at considerable length in Artype, Incorporated v. Zappulla, 2 Cir., 1956, 228 F.2d 695, provides extensive protection for common-law trade-marks even when no secondary meaning has been established.

4. To the extent that Strey v. Devine's, Inc., 7 Cir., 1953, 217 F.2d 187, holds to the contrary, we disagree with the holding in that case.

5. Judge Clark suggests that Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125 (a), provides an additional basis for federal jurisdiction over the greater portion of the unfair competition phase of this case, and one that would lead to the application of federal law. Since the plaintiff has never asserted any claim under § 43(a), and since the result is unaffected whether federal or state law is applied, we think it unnecessary, having sustained federal jurisdiction on one ground, to determine here whether such jurisdiction could be based on other grounds.

■ Defendant's final group of contentions relate to the relief granted by the trial judge. We think these contentions are without merit, and that the relief granted is adapted to the general equities of the situation. While we have held that an accounting of damages and profits should not be the invariable result of a finding of infringement, Admiral Corp. v. Penco, Inc., 2 Cir., 1953, 203 F.2d 517, where findings of confusion and "palming off" are supported by the record, an accounting is justified. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1942, 316 U. S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Century Distilling Co. v. Continental Distilling Corp., 3 Cir., 1953, 205 F.2d 140. The assessment of damages and profits, of course, must be in accordance with statutory provisions and long-settled equitable principles. See 15 U.S.C.A. § 1117.

■ Defendant also objects to the inclusion in the interlocutory decree of a provision awarding counsel fees to the plaintiff. It is now settled that counsel fees may be awarded to the successful litigant in trade-mark infringement cases where there is a finding of fraud. Keller Products, Inc., v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382; Century Distilling Co. v. Continental Distilling Corp., supra; Admiral Corp v. Penco, Inc., supra; Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 1941, 116 F.2d 708; General Motors Corp. v. Circulators & Devices Mfg. Corp., D.C.S.D.N.Y. 1946, 67 F.Supp. 745. Gold Dust Corp. v. Hoffenberg, 2 Cir., 1937, 87 F.2d 451, which is to the contrary, would appear to have been overruled sub silentio by Admiral Corp. v. Penco, Inc., supra.

■ Finally, defendant contends that its New Rochelle and Philadelphia stores should not be included in the accounting, the New Rochelle store because it was established prior to the formal notice of infringement, and the Philadelphia store because plaintiff does not have a competing store in the Philadelphia area. However, the trial judge found that defendant adopted its trade-name with knowledge of plaintiff's trademark; and an infringer must account for profits even in areas where he does not directly compete with the trade-mark owner. Blue Bell Co. v. Frontier Refining Co., 10 Cir., 1954, 213 F.2d 354; Dad's Root Beer Co. v. Doc's Beverages, Inc., 2 Cir., 1951, 193 F.2d 77.

The decree is affirmed.

CLARK, Chief Judge (concurring).

My concurrence in Judge Waterman's able opinion herewith perhaps ought not to be marred by a query as to his reliance on the state law of unfair competition, for a more academic issue can hardly be conceived. Since problems of unfair competition in trade and trade names almost invariably concern also trade-marks and transcend state lines, it is not surprising that the governing law developed in the federal courts and much of its doctrine is connected with the names of great federal judges. So the issue is really whether we shall apply our regurgitation of the state redistillation of federal precedents or go more directly and realistically to the sources themselves. Actually, so far as I can discover, we have never found any difference in ultimate result, and so quite often lump federal and New York law together, as in Hyde Park Clothes, Inc., v. Hyde Park Fashions, Inc., 2 Cir., 204 F.2d 223, 225, certiorari denied 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed. 351, or—even more conveniently—eschew all reference to the matter. Mastercrafters Clock & Radio Co. v. Vancheron & Constantin-Le Coultre Watches, Inc., 2 Cir., 221 F.2d 464, certiorari denied 350 U.S. 832, 76 S.Ct. 67. The latter is the course taken below in a decision and judgment which we are finding correct and which in all its major essentials is admittedly subject to federal law. As a matter of fact it requires rather diligent search to find a small corner of the relief granted which may even present the issue.

But the demands of doctrine, pure and true, must be served; and since the subject begets confusion, some comment upon it is justified. Of course I should prefer the direct and realistic approach in-

dicated above, and do believe we are entitled to go directly to the apposite federal precedents without subterfuge or ornamental rationalization. But if the latter is required, I believe it is rather easily found—in several different ways in fact. Thus Judge Waterman relies on *diversity* cases in unfair competition as affording a state basis for claims *pendent* to trade-mark claims, and so within federal jurisdiction under 28 U.S.C. § 1338 (b). But the conclusion is clearly not required by the premise, and to me seems too great a jump to be accepted. Federal jurisdiction is here justified entirely because of the close interrelation of the two claims, the practical impossibility of disentwining them, and the intention (as the Reviser in the quoted Note says) "to avoid 'piecemeal' litigation." Is the desirable Congressional purpose to be hampered, if not thwarted, by reading into the statute some requirement of doctrinal piecemealing? I do not think we should here (a bit unnecessarily) initiate a novel precedent thus impairing the statutory union.

Then, too, I do not see how we can avoid the clear federal jurisdiction arising under the new and quite extensive provision covering the false description or representation of goods introduced into commerce. Lanham Act, § 43(a), 15 U.S.C. § 1125(a). By the broad and liberal construction properly given this remedial legislation, as in L'Aiglon Apparel, Inc., v. Lana Lobell, Inc., 3 Cir., 214 F.2d 649, the major and more important portions of the relief here granted would be supported under federal law. I think we must consider the applicability of this statute, and cannot avoid it, even though counsel does not cite it; for we are bound by the law of the land, whether cited to us by counsel or not. See Sword Line, Inc., v. United States, 2 Cir., 230 F.2d 75. Indeed, there is indication here and elsewhere that the bar has not yet realized the potential impact of this statutory provision.

Only when we pass these points of federal jurisdiction do we come to the point particularly stressed in note 1 of the opinion, in apparent criticism of the Ninth Circuit view that § 44 of the Lanham Act, 15 U.S.C. § 1126, created a substantive federal law of unfair competition wherever interstate commerce is involved. I hope I have demonstrated that, even though the Ninth Circuit's interpretation is rejected, it does not follow that New York law must govern here; for the reasons stated above, I think the contrary must be the view. But though not strictly necessary, I do want to reiterate briefly the support I have already expressed for that interpretation, as in, e. g., Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc., supra, 2 Cir., 204 F.2d 223, 227; Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517; Dad's Root Beer Co. v. Doc's Beverages, Inc., 2 Cir., 193 F.2d 77, 80. It is true that the contrary has been held by a panel of our court. American Auto. Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, certiorari denied 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391. But I feel constrained to point out that the discussion there was most summary and that the decision has been subjected to question on other grounds, since it made not one but three very restrictive holdings as to federal jurisdiction, which have been brilliantly criticized, as, for example, in 39 Corn.L.Q. 351. The destructive effects of that case upon useful and respected trade-marks suggest that the whole question deserves re-examination, if not by us, at least by some tribunal.[1] As I have pointed out above, we

---

[1]. The AAA case, supra, went beyond questions of controlling law to deny federal jurisdiction to protect the AAA trademark, so well known to autoists. Thus it rejected as grounds (1) infringement of a federally registered mark, (2) pendent jurisdiction over a claim of unfair competition, and (3) the Ninth Circuit rule; although it did remand for the limited possibility of a further showing of facts to support a bona fide claim of trademark infringement to which the claim of unfair competition could be related. But thus it made what is aptly termed in 39 Corn.L.Q. 351, 352, a "narrow and technical construction," to limit remedies available on the first two grounds and to reject the third ground entirely. It held

necessarily have now at least a partial federal law of unfair competition; we so much need a complete and uniform law to supplement and round out the existing federal law of trade-mark infringement that we should be astute to avoid this confusing fragmentation of decision wherever we reasonably can.

the AAA's trade-mark to be infringed only in connection with *goods*, not *services*, and, upon finding its use as to goods limited, essentially denied a remedy for its protection, as well as removed the basis for pendent jurisdiction of a claim for unfair competition. Hence the cited criticism is pointedly persuasive even if the Ninth Circuit view is to be rejected. But as stated in, e. g., 39 Corn.L.Q. 351, supra, and 6 Syracuse L.Rev. 200, rather strong arguments can be made for the Ninth Circuit's conclusion of a Congressional intent for a wider and more uniform remedy for unfair competition; and the Supreme Court has already shown its awareness of the problem. See Steele v. Bulova Watch Co., 344 U.S. 280, 283, note 6, 73 S.Ct. 252, 97 L.Ed. 252. The restricted construction to the contrary depends perhaps more on judicial conservatism and inability to accept easily a broadening of remedies, even in response to felt needs, than upon any necessity of statutory interpretation in itself. Such a construction of remedial legislation may itself engender problems, as we have discovered. Transmirra Products Corp. v. Fourco Glass Co., 2 Cir., 233 F.2d 885, 887 and note 4 thereof.