**DIETENE COMPANY, Appellant,**

**v.**

**DIETRIM COMPANY and Vitamin Industries, Inc., a corporation, Appellee.**

**No. 15164.**

United States Court of Appeals
Eighth Circuit.

Aug. 12, 1955.

240

Gerrit P. Groen, Chicago, Ill. (Harold A. Prince, Grand Island, Neb., was with him on the brief), for appellant.

Philip B. Polster, St. Louis, Mo., for appellee.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment dismissing upon the merits the complaint

of the plaintiff (appellant) in an action for trade-mark infringement and unfair competition.

The plaintiff is a Minnesota corporation which brought this action upon the claim that it owns the trade-mark "Dietene" for a fortified dietary food supplement which the plaintiff and its predecessors have been engaged in producing and distributing since January, 1934; that the trade-mark was registered November 19, 1935, as No. 329,995, under the Trade-Mark Act of 1905, 33 Stat. 724; that the trade-mark has been used by the plaintiff and its predecessors to distinguish and identify the product, and is a valid, subsisting, unrevoked and uncancelled trade-mark; that the plaintiff has built up a valuable business and good will throughout the United States in the sale of Dietene; that the trade-mark "Dietene" has come to mean to the public the product of the plaintiff; that the defendants (appellees) are selling fortified dietary food supplement products in competition with the plaintiff under the mark "Dietrim", which is confusingly similar to the trade-mark "Dietene"; that the defendants have infringed the plaintiff's trade-mark rights, have engaged in unfair competition, and have continued to do so after notice of infringement. The plaintiff demanded an injunction and an accounting. Jurisdiction was based on diversity of citizenship, as well as upon Title 15 U.S.C.A. § 1121.

The defendant Vitamin Industries, Inc., a Nebraska corporation, the only actual defendant (the "Dietrim Company" not being a legal entity but only a trade name sometimes used by Vitamin Industries, Inc., in connection with its sales of Dietrim), in its answer denied that by using the mark "Dietrim" in connection with the sale of its vitamin dietary supplement it had infringed the plaintiff's trade-mark, and denied that there was any confusing similarity between the marks "Dietene" and "Dietrim" or that any confusion had been occasioned by the alleged similarity of the marks. The defendant asserted that the marks were dissimilar and that the dissimilarity was accentuated by the fact that Dietene was distributed in powder form, in cans, by weight, in two flavors—chocolate and vanilla, while the defendant's product was distributed in capsule form in bottles.

The only issue expressly raised by the pleadings was whether the marks "Dietene" and "Dietrim" were so similar as to make the defendant an infringer or an unfair competitor.

The case was tried to the court without a jury. There was little, if any, dispute as to the evidentiary facts. The product Dietene was originated in 1934 by the Dietary Foods Company of Minneapolis, which in that year was acquired by the Dietene Company, not then incorporated but operating as a division of Larx Company, Incorporated, of Minneapolis. In 1951 the plaintiff was incorporated under Minnesota law, and acquired from Larx Company, Incorporated, the trade-mark "Dietene" and the good will which went with it.

The plaintiff makes and distributes two products: Dietene Reducing Supplement and Meritene Whole Protein Supplement. Both are supplementary foods. Dietene is used primarily as a supplement to a low calorie diet, to provide adequate proteins, vitamins and minerals. Meritene is normally used to provide extra quantities of those things in special diets beyond normal requirements.

Dietene is distributed in the form of a powder, in cans, to be mixed with milk, and to be used by those on a reducing diet, to insure adequate nutrition. The trade-mark "Dietene" has appeared on the cans containing the product as well as upon plaintiff's letterheads and advertising material. Instructions have been furnished with every can of Dietene, together with a suggested diet. The product has been checked by the American Medical Association, and its seal of acceptance is used on every package and on the plaintiff's literature and letterheads. Dietene is the only product of its type having this seal of acceptance.

To promote the sale of Dietene, the plaintiff furnishes suggested reducing diets to physicians for distribution to their patients. These diets are distributed through Physicians' Nutrition Clinics for use by physicians and dietitions. A physician can fill in the name of a patient on one of the suggested diets and give it to the patient to follow. The folders containing the suggested diets are distributed in large numbers, 90,000 sets being used in 1953.

Dietene reaches the public mainly through retail druggists. The plaintiff's direct customers are wholesale druggists and large retail chain stores. Dietene is not sold on prescription, but upon recommendation and as an over-the-counter product. It is frequently on open display. The product has been assayed once a year by the Wisconsin Alumni Research Foundation, to insure that it is as represented. A copy of the report of the Foundation is sent to the American Medical Association to evidence that the product is as claimed. A copy of the report is also furnished the Inspector from the Federal Food and Drug Administration when he comes around. In the middle thirties, Dietene was nationally publicly advertised. Later on, sales promotion was through the medical profession.

Total net sales of Dietene from 1934 to 1953 were $1,256,137.63. Annual sales for each of the years 1952 and 1953 exceeded $200,000. Sales had been small prior to 1945 and 1946. The increase in sales since that time is attributed to the reinvestment of profits in advertising. Distribution of Dietene is nationwide. From 1934 to 1953 the plaintiff and its predecessors spent or allocated to sales promotion and advertising $431,358.11. The plaintiff has regularly advertised its product in the Journal of the American Medical Association, the Annals of Internal Medicine, and in Medical Economics and Modern Medicine. It employs ten full-time salesmen, who call on physicians, hospitals, and wholesale and retail druggists. Constant advertising in the American Medical Association

Journal, together with the fact that Dietene is acceptable to the American Medical Association's Council on Foods and Nutrition, has familiarized doctors with the plaintiff and its product.

The plaintiff discovered that the defendant's product Dietrim was in competition with the plaintiff's product in April, 1952, when a department store in Minneapolis advertised the latter, and had Dietene and Dietrim in its drug department. The defendant was notified that the plaintiff claimed infringement of its trade-mark.

Dietrim has been on the market since 1943 or 1944. The present distribution of Dietrim is small, but the defendant could become a serious competitor. The two products are similar. Both are intended to insure adequate nutrition to those who are upon a reducing diet. It is true that the ingredients of the products are not the same, and that, while Dietene is a powder sold in cans, Dietrim is a powder sold in capsules in bottles. The defendant sells its product in drug stores and department stores in the middle west. Estimated sales are about 5,000 bottles a year. Dietrim is only one of the defendant's products. The defendant handles possibly 250 vitamin formulas. It does no direct advertising of Dietrim but enters into agreements with its customers to pay part of the cost of advertising placed by them. The defendant has in the past used "Dietrim Company" as a trade name in connection with the sale of Dietrim. Application for registration of the mark "Dietrim" was made, apparently in 1945, but the mark is not a registered trade-mark.

At the close of the plaintiff's evidence and the close of all the evidence, the defendant moved for a dismissal of the complaint on the grounds that the plaintiff had failed to prove jurisdiction, infringement, confusing similarity of the marks in suit, damages, or any right to injunctive relief. So far as the record on appeal shows, the ownership of the trademark "Dietene", its use by the plaintiff and its predecessors from 1934 to the time of the trial, and the validity of the

trade-mark, were unchallenged by the defendant. Its defense was apparently noninfringement, due to an asserted failure of proof of confusing similarity of the marks or of actual damages.

The District Court, in deciding the case, Dietene Co. v. Dietrim Co., 121 F.Supp. 785, found that the plaintiff was the owner of the trade-mark "Dietene" as applied to a reducing supplement; that the trade-mark was originally registered under the Trade-Mark Act of 1905, and subsequently republished on the Principal Register established under the Trade-Mark Act of 1946, 60 Stat. 427, Title 15 U.S.C.A. § 1051 et seq. The court pointed out that § 1052 of Title 15 U.S.C.A. precluded the registration of a mark which is merely descriptive of the goods of the applicant, and ruled that the plaintiff's trade-mark "Dietene" was merely descriptive of the plaintiff's product. The court also dissected the two marks in suit, and held, in substance, that since "diet" was a descriptive word common to both marks and since the plaintiff had added the suffix "ene" to "diet", while the defendant had added "rim", and since "ene" and "rim" were dissimilar, there was no confusing similarity between the marks, and that the plaintiff's mark was not entitled to legal protection as against the defendant. The court made an exhaustive comparison of the trade-mark "Dietene" with other trade-marks which had, in other cases, been held to be merely descriptive and therefore invalid. While such comparisons are interesting and not necessarily unhelpful, each case of this kind must stand or fall upon its own peculiar facts.

The trade-mark "Dietene" suggests that the product to which it has been applied has some relation to a diet, but it certainly is not merely descriptive of a food supplement consisting of non-fattening vitamins, proteins and minerals for use by those who are on a reducing diet. That a trade-mark is suggestive does not mean that it is invalid and not entitled to protection. Le Blume Import Co., Inc., v. Coty, 2 Cir., 293 F. 344, 351–352; Henry Muhs Co. v. Farm Craft Foods, Inc., D.C.E.D.N.Y., 37 F.Supp. 1013; San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, Inc., 8 Cir., 152 F.2d 532, 533–534; Hanson v. Triangle Publications, Inc., 8 Cir., 163 F.2d 74, 77; Douglas Laboratories Corporation v. Copper Tan, Inc., 2 Cir., 210 F.2d 453, 455.

It is our opinion that the trade-mark "Dietene", while suggestive, is not merely descriptive of the ingredients, qualities or characteristics of the product to which it is applied, and that it is a valid trade-mark, the exclusive use of which by the plaintiff is entitled to legal protection. Moreover, "The manufacturer or vendor is entitled to the reputation which his goods have acquired and the public to the means of distinguishing between them and other goods; and protection is accorded against unfair dealing whether there be a technical trade-mark or not." William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 531, 44 S. Ct. 615, 618, 68 L.Ed. 1161.

It seems to us that with respect to products which may affect human health and which ordinarily should be taken upon the advice or recommendation of a physician, the avoidance of confusing similarity of trade-marks is vitally important.

Under § 1127 of Title 15 U.S.C.A., "The term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive purchasers." The use, without consent of the registrant, of a "colorable imitation" of a registered mark renders the user liable. Title 15 U.S.C.A. § 1114.

We think that the mark "Dietrim" so closely resembles the registered mark "Dietene" that confusion is likely to occur. We are unable to accept the theory that because the plaintiff's trade-mark ends in "ene" and the defendant's mark in "rim", confusion will be avoided.

Our conclusion is that, under the evidence and the applicable law, the plaintiff was entitled to the injunctive relief

which it sought, and that the District Court erred in dismissing the complaint. Since the record indicates that the plaintiff suffered no substantial damages or loss of profits from the defendant's competition and that an accounting would be futile, we think that none need be had. Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 206 F.2d 144, 148; McCormick & Co., Inc., v. B. Manischewitz Co., 6 Cir., 206 F.2d 744, 747. The judgment is reversed with directions to enter a judgment for the plaintiff in conformity with this opinion.